[No. 4137.   Decided July 26, 1902.]

# L. B. HASTINGS, *Appellant,* v. ANACORTES PACKING COM-PANY *et al., Respondents.*

CORPORATIONS — CITIZENSHIP — OWNERSHIP OF STOCK BY ALIENS.

A corporation organized and existing under and by virtue of the laws of this state, which authorize "any two or more persons" to organize a corporation but nowhere requires that the incorporators, nor the holders of a majority of the capital stock, shall be citizens of the state or of the United States, is not an alien merely because a majority of its capital stock is owned by aliens, but is a domestic corporation.

SAME — FISHING SITE NOT REAL ESTATE.

The constitutional provision (Art. 2, § 33) prohibiting corporations, the majority of whose stock is held by aliens, from acquiring the ownership of lands in this state places no restriction upon the granting of fishing licenses to such corporations, since the license authorized under our statutes is merely a roving license for a limited period without conferring any title to real property.

SAME — PLACE OF BUSINESS.

The fact that a fishing company had its real and active place of business outside of the state during certain seasons of the year, would not make it a non-resident, where it had otherwise fully complied with the requirements of our corporation laws, nor would such fact justify the seizure of its fishing site by a stranger.

FISHING RIGHTS — CONTEST BETWEEN LOCATORS — PLEADINGS.

Where defendant could, under the statute, lawfully operate three fishing sites, a general allegation that it operated more than three is not sufficiently specific to authorize the introduction of evidence showing that any particular one was being unlawfully operated.

SAME.

An affirmative defense contained in the reply to the effect that defendant had abandoned a fishing site during a certain fishing season was properly overruled, where the issue raised by defendant's answer was to the effect that it had maintained its location during such season.

SAME — VIOLATION OF STATUTE BY LICENSEE — EFFECT.

A private individual cannot profit by the failure of a licensee under the fishing laws of the state to perform the duties enjoined by law, until the state has declared a forfeiture of rights under his license.

HARMLESS ERROR — IMPROPER ADMISSION OF EVIDENCE.

The admission of incompetent evidence in an action of equitable cognizance, which is triable *de novo* on appeal, is not ground for reversal.

Appeal from Superior Court, San Juan County.—Hon. GEORGE A. JOINER, Judge. Affirmed.

*Sweeney, French & Steiner,* for appellant.

*Dorr & Hadley* and *Kerr & McCord,* for respondents.

The opinion of the court was delivered by

FULLERTON, J.—This is a contest over a fishing site. In his complaint, the appellant, who was plaintiff below, after alleging the due incorporation of the respondent Anacortes Packing Company under and by virtue of the laws of the state of Washington, further alleged that he was the owner of a certain pound net fishing license issued to him by the fish commissioner of the state of Washington, and by reason thereof was authorized to locate a pound net in any of the waters of Puget Sound, wherein pound nets were not especially prohibited by law; that on the 6th day of April, 1901, while such license was in full force, he located a fishing site in the waters of Puget Sound, at or near the southwest point of San Juan Island, known as "Salmon Banks," by driving piles and posting his license number thereon in the manner required by statute; that thereafter he caused the site to be surveyed, and a plat thereof made and filed with the fish commissioner; that on or about the 15th day of April, 1901, the respondents wrongfully, willfully, and mali-

15—29 Wash.

ciously entered upon his location, removed one of the piles placed thereon by him, and then and there proceeded to drive other piles preparatory to the construction of a fish trap thereon, and attempted to appropriate the site to their own use and exclude him therefrom; that the respondents' entry thereon was wrongful, willful, and malicious, and to his damage in a large sum. Injunctive relief was demanded.

The answer of the respondent Winch was, in effect, a disclaimer of interest. The respondent Anacortes Packing Company answered, denying the material allegations of the complaint; admitting, however, its due incorporation; that the appellant had driven piles on the site as alleged, and posted a number thereon; and that it on or about the 15th of April, 1901, entered on the site in question, and proceeded to drive piles preparatory to constructing a trap for the fishing season of 1901,—averring that such entry was of right. Further answering by way of a cross complaint it alleged that the fishing site in question was first located by its predecessor in interest, as early as the beginning of the fishing season of 1896, and that such site had been continuously occupied and fished by its predecessor in interest and itself during the fishing seasons from that time down to the present time, under successive fishing licenses issued by the fish commissioner of the state of Washington; that on the 26th of April, 1900, it procured from the fish commissioner a pound net license, numbered 856, and shortly after that date relocated the site in question, by driving piles and posting its license number thereon as required by law; that thereafter, and before the fishing season of 1900 opened, it constructed a pound net trap on the site, and fished the same during the entire fishing season of 1900; that it had since the close of the fishing season of 1900

continuously maintained upon the site piles marking the location, and kept its license number posted thereon, and that the site was so marked at the time of the appellant's entry thereon on April 6, 1901; that the entry of the appellant was wrongful, malicious, and unlawful, and was made with full knowledge of the fact that the respondent was then, and had been for many years last past, in open and notorious possession of the same. It further alleged that at the time of such entry the lead of its old trap was in existence, clearly marking and defining the location of the site, and that its camp buildings were then located upon the shore, immediately abutting upon the fishing ground. It further alleged its due incorporation under the laws of the state, that it was not the owner of more than three pound net fishing licenses issued by the fish commissioner, and that the trap location was in lawful waters. It also prayed for injunctive relief.

For reply, the appellant denied generally the allegations of the cross complaint, save the due incorporation of the respondent, and set up three affirmative defenses. In the first of these it is alleged that a large majority of the shares of the capital stock of the respondent, practically all, were owned and held by the respondent R. V. Winch and one George E. Bower, and that neither Winch nor Bower were or ever had been citizens of the United States; that nominally the principal place of business of the respondent was at Anacortes, in this state, but that its real and active place of business, except for a few months in each year, was at Vancouver, British Columbia; and that the respondent had, contrary to law, during the fishing season of 1900, owned, operated, and taken fish from some twelve different fishing sites under licenses obtained from the fish commissioner, "taken out in the names of different parties for the use and benefit of said Anacortes

Packing Company." The second and third affirmative defenses were as follows:

"For a second, further, separate, and distinct defense to the answer and cross-complaint of the defendant the Anacortes Packing Company, plaintiff alleges: First, That if defendant, the Anacortes Packing Company, made any location, or constructed any trap, under license number 856 between the 26th day of April, 1900, and the institution of this suit, the defendant has forfeited all right to said location under said license number 856 prior to the institution of this suit, for the reason that said defendant failed to construct a trap and to fish said location for and during the fishing season of 1900, as provided by law.

"For a third, separate, and distinct defense to the answer and cross-complaint of the defendant the Anacortes Packing Company, plaintiff alleges: First, That if defendant the Anacortes Packing Company took fish from any fish trap or fishing location in the waters of Puget Sound Fishing District during the fishing season of 1900, or if said the Anacortes Packing Company fished said location during the fishing season of 1900, under license numbered 856, it did so in violation of the laws of the state of Washington, and specially in violation of the Acts of 1899, section 6, published in the Session Laws of the state of Washington at page 198 *et seq.,* and which said Act was approved on the 13th day of March, 1899; and whatever rights the defendant the Anacortes Packing Company claims to have acquired to the location described in the answer and cross-complaint of said defendant were, if acquired at all, so acquired while defendant was engaged in the violation of said above named section of said act of March 13, 1899."

Demurrers were interposed and sustained to these affirmative defenses, and the cause tried upon the remaining issues, resulting in a judgment for the respondent, enjoining the appellant from entering upon or in anywise interfering with the fishing site in dispute.

The appellant has assigned as error the rulings of the court sustaining demurrers to the affirmative matters set out in his reply. Taking these up in their order, he contends that no one but a citizen, whether a natural person or a corporation, can lawfully acquire a fishing license, or lawfully locate thereunder a fishing site in any of the waters of this state, and that a corporation, although incorporated within and by virtue of the laws of this state, is not a citizen of the state if a majority of its capital stock is owned by aliens; and hence, he argues, it was error on the part of the trial court to deny him the right to show that a majority of the capital stock of the respondent Anacortes Packing Company was held by aliens. It is strenuously urged by the respondent that these are questions which the state only can raise. But this question, and the further question, viz., whether any person other than a citizen of the state may lawfully obtain a fishing license, and locate a fish trap thereunder, we have not found it necessary to consider, and do not decide, as the view we have taken of the appellant's second proposition concludes the question against him. We cannot agree that a corporation organized and existing under and by virtue of the laws of this state is an alien because a majority of its capital stock is owned by aliens. Subject to the limitations imposed by the constitution, the power of the legislature to prescribe who may and who may not form a corporation, the powers, privileges, immunities, and status of such corporation when formed, is plenary; and the courts are without power to engraft upon it conditions and limitations not warranted by the law authorizing its creation. The legislature of this state has by general law authorized the formation of corporations to engage in the business for which the respondent corporation was organized to engage in. The act, after providing generally the pur-

poses for which corporations may be organized, further provides that "any two or more persons" may organize a corporation for one or more of such purposes (Ballinger's Code, § 4250 *et seq.*) It nowhere requires that the incorporators shall be citizens of the state or of the United States, nor does it require that the holders of a majority of the capital stock of the corporation shall be citizens of the state, or of the United States. The limitations in this respect are: First, that a corporation, the majority of whose stock is held by aliens is prohibited from acquiring the ownership of lands (Constitution, art. 2, § 33); and, second, that the corporate powers of the corporation shall be exercised by a board of trustees, one of whom shall be a resident of the state, and a majority citizens of the United States. (Ballinger's Code, § 4255.) Neither of these limitations meet the objection urged by the appellant here. The license to fish in the waters of the state which the statute authorizes the fish commissioner to issue is a roving license. It runs only for a limited period,—one year,—and all rights acquired thereunder cease at the expiration of the license. While under it the holder may locate and occupy exclusively during its life a fixed location, he acquires no title to real property in so doing. For the legislature, therefore, to permit a corporation, a majority of the capital stock of which is held by aliens, to exercise this privilege, does not violate the constitutional prohibition against alien ownership of lands. The language of the constitution on this subject is particularly restrictive. After prohibiting alien ownership of lands, it provides that "every corporation, the majority of the capital stock of which is owned by aliens, shall be considered an alien for the purposes of this prohibition,"—not that it shall be considered an alien for all purposes, or for any other purpose than the owner-

ship of lands.  For all other purposes a corporation or-
ganized under the laws of the state, a majority of the
capital stock of which is held by aliens, is a domestic
corporation,—a citizen of the state,—and has all the
rights and privileges the law accords to corporations gen-
erally.  As such it can lawfully procure a fishing license
from the fish commissioner of the state, and lawfully
locate a fishing site thereunder.

There is no merit in the contention that the respondent
corporation has its real and active place of business else-
where than in this state for certain seasons of the year.
Such conduct neither makes it a non-resident, nor does it
violate the provision of the statute requiring it to state
in its articles of incorporation the city, town, or locality
in which its principal place of business is to be located.
But if it did either or both, such act or acts would not
justify the seizure of its property by a stranger.

The sustaining of the demurrer to that branch of this
defense averring that the respondent corporation was the
owner of more than three fishing licenses was justified on
the ground that the question there sought to be raised was
in issue by the allegations of the cross complaint and the
denials thereto.  This being so, no affirmative plea on the
part of the appellant was necessary, to enable him to in-
troduce evidence upon the point.  But more than this, the
plea was insufficient to raise an issue.  As the respondent
could lawfully operate three fishing sites, a general alle-
gation that it operated more than three is not sufficiently
specific to authorize the introduction of evidence showing
that any particular one was being unlawfully operated.
Facts should be alleged showing that the particular loca-
tion was unlawful.

The question sought to be raised in the second defense
pleaded was also included in the general issue.  As the

law provides that a failure to fish a located site during the fishing season constitutes an abandonment, it was necessary for the corporation, in order to show that it had maintained its location during the period of its license, to allege and prove that it had fished the site during the fishing season included therein. No affirmative plea was necessary, therefore, to enable the appellant to introduce counter evidence.

No issue could be raised upon the allegations contained in the third defense which could avail the appellant. If the corporation omitted to do the things required by the sixth section of the act of 1899, the state might call the corporation to account, but until it does so, and declares the rights acquired by other provisions of the statute forfeited, no private individual can profit thereby.

The appellant further contends that the trial court permitted the respondent to introduce incompetent evidence, and he argues the point as if error in this respect was, alone, sufficient to entitle him to reversal of the judgment entered by the trial court. If this be his position, he is mistaken. Cases of this character are tried in this court *de novo.* In so trying them, the court will disregard incompetent evidence, and try the cause upon that part of the evidence it deems to be competent; and it is only when the competent evidence fails to support the findings of fact made by the trial court that it will reverse the judgment founded thereon. In recognition of this principle, we have said that it was better for the trial court, in cases where the evidence offered was of doubtful competency, to admit the evidence, as this court could then make a final disposition of the case, whereas, if competent evidence be excluded, it would necessitate remanding the case for a further hearing. The real question, therefore, is, does the competent evidence sustain the findings of the

trial court? On this question we have had no difficulty. To our minds, the court's findings are sustained by the overwhelming preponderance of the evidence—in fact, we have been unable to discover that there is a conflict on any material issue of fact.

The judgment is affirmed.

WHITE, HADLEY, ANDERS, MOUNT and DUNBAR, JJ., concur.

REAVIS, C. J., concurs in the result.